Filed 1/10/25  P. v. Jimenez CA4/2
*See dissenting opinion*

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082632 |
| v. | (Super.Ct.No. INF1501116) |
| IVAN RAUL JIMENEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Kathryn Kirschbaum and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Ivan Raul Jimenez challenges the trial court's order finding he was not eligible for recall and resentencing relief under Penal Code section 1172.75.[1]  The court entered its order after verifying a one-year enhanced term for a prison prior (§ 667.5, subd. (b)) remained stayed and had not been executed in more than five years since defendant's original sentencing.  We affirm the court's ruling.

### FACTUAL AND PROCEDURAL HISTORY

In December 2016 a jury found defendant guilty of vehicle theft (Veh. Code, § 10851, subd. (a)), two counts of using another person's identifying information (Pen. Code, § 530.5, subd. (a)), fraudulent use of access cards or account information (Pen. Code, § 484g, subd. (a)), second degree burglary (Pen. Code, § 459), and resisting a peace officer (Pen. Code, § 148, subd. (a)(1)).  The jury was unable to reach a verdict on a first degree burglary count (Pen. Code, § 459) and one for receiving a stolen vehicle (Pen. Code, § 496d), but defendant subsequently pleaded guilty to the burglary count.  He also admitted to a prior strike, a prior serious felony, and a prior prison term allegations.

At defendant's sentencing hearing in June 2018 the court imposed a prison term of 22 years eight months.  In imposing an enhanced term for the prison prior, the court specified:  "[I]t will be one year, but that will be stayed."

Almost five and one-half years later, in November 2023 the court held a hearing to consider recall of defendant's sentence and resentencing under section 1172.75.  The court concluded defendant was ineligible for resentencing under the statute.  The court

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

explained: "Since the prison prior was stayed, it has no effect on the sentence he's serving, therefore, [he has] no right to resentencing."

## DISCUSSION

Defendant contends the trial court erred in concluding he was ineligible for resentencing under section 1172.75. We conclude the court did not err.

Defendant's appeal revisits the question this court and others have considered regarding whether a prior prison enhancement currently subject to a stay falls within section 1172.75's recall and resentencing procedure. The question turns on the statute's use of the word "imposed." (§ 1172.75, subd. (a); see, e.g., *People v. Christianson* (2023) 97 Cal.App.5th 300, 311 (*Christianson*) ["The only question is whether the enhancements were 'imposed' as the word is used in section 1172.75, subdivision (a)"], rev. granted Feb. 21, 2024, S283189.)

In challenging the trial court's ruling, defendant relies on cases decided since this court held that a defendant whose sentence includes a prior prison enhancement imposed under former section 667.5, subdivision (b), but currently stayed, is outside the resentencing relief the Legislature intended in enacting section 1172.75. (See *People v. Rhodius* (2023) 97 Cal.App.5th 38 (*Rhodius*), rev. granted Feb. 21, 2024, S283169.) As we explain, we see no reason to depart from *Rhodius* pending the Supreme Court resolving the issue.

As in *Rhodius*, our review begins with the governing law.

Section 1172.75, subdivision (a), states that "[a]ny sentence enhancement that was *imposed* prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for

3

any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." (Italics added.) The statute provides a conditional trigger for recall and resentencing, as follows: "*If* the court determines that the *current* judgment includes an enhancement described in subdivision (a)," namely, one "imposed" before 2020, but not for a sexually violent offense, "the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c), italics added.) The statutory scheme states the Legislature intended that resentencing undertaken "pursuant to this section shall result *in a lesser sentence* than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1), italics added.)

We interpret statutes de novo. The goal is to " 'ascertain the Legislature's intent in order to effectuate the law's purpose.' " (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1125 (*Gonzalez*).) "We begin with the statutory language, viewed in light of the entire legislative scheme of which it is a part, as the language chosen is usually the surest guide to legislative intent." (*Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 670; *In re Corrine W.* (2009) 45 Cal.4th 522, 529.) We interpret terms used by the Legislature in context, "giv[ing] them their usual and ordinary meaning." (*Gonzalez*, at p. 1126.) "If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy." (*Ibid*.)

The first appellate court to consider the meaning of "imposed" in section 1172.75 quoted our Supreme Court's discussion of the word in *Gonzalez*, but only partially.

4

(*People v. Renteria* (2023) 96 Cal.App.5th 1276 (*Renteria*).) *Gonzalez* addressed the Legislature's use of "imposed" in amendments to section 12022.53 regarding imposition of firearm enhancements. *Renteria* relied on *Gonzalez*'s observation that, by definition, " 'the word "impose" applies to enhancements that are "imposed and then *executed*" as well as those that are "imposed and then *stayed*." ' " (*Renteria*, at p. 1282, quoting *Gonzalez*, *supra*, 43 Cal.4th at p. 1125.) *Renteria* concluded that, "as a consequence" of section 1172.75 using the word "imposed," the statute's recall and resentencing procedure applies to all sentences in which a section 667.5, subdivision (b), prior prison was imposed—regardless of whether the enhanced penalty was executed or stayed. (*Renteria*, at pp. 1282-1283.)

It appears neither party in *Renteria* raised *Gonzalez*'s express caveat that, in common practice, a usual and ordinary meaning of "imposed" is that it "often" refers to sentences that are actually executed, not those that are stayed. (*Gonzalez*, *supra*, 43 Cal.4th at p. 1125.) *Renteria* did not address this distinction, nor that *Gonzalez* itself exemplified a statutory use case of "impose" and "imposed" requiring execution of the sentence, rather than imposition and a stay. (*Gonzalez*, at p. 1126 ["impose" and "imposed" as used in section 12022.53, subdivision (f), meant "impose and then execute, as opposed to impose and then stay"].) Neither party in *Renteria* sought review.

Next, after the Sixth District's decision in *Renteria*, this court considered the issue. We concluded that when read "as a whole" and harmonizing the statute's several provisions, including implementation instructions to the California Department of Corrections and Rehabilitation (CDCR) and to sentencing courts, the Legislature

5

intended "imposed" in section 1172.75 "as meaning 'imposed and executed.' " (*Rhodius*, *supra*, 97 Cal.App.5th at p. 45.)

Subsequently, our Fourth District colleagues in Division One took up the issue in *Christianson*. Acknowledging *Gonzalez*, *Christianson* recognized section 1172.75's use of imposed "is at least somewhat ambiguous." (*Christianson*, *supra*, 97 Cal.App.5th at p. 311.) To aid in discerning the term's statutory meaning, the court looked to the steps set out in section 1172.75 preceding recall and resentencing. (See, e.g., *People v. Cota* (2023) 97 Cal.App.5th 318, 332 [recall and resentencing "process . . . triggered by" CDCR review].)

In brief, section 1172.75 requires the CDCR first to identify all inmates "currently serving a term for a judgment that includes an enhancement described in subdivision (a)," after which, "[u]pon receiving th[is] information" from the CDCR, "the sentencing court that imposed the enhancement" then "shall review the judgment and verify that *the current judgment* includes a sentencing enhancement described in subdivision (a)." (§ 1172.75, subds. (b) & (c), italics added.)

*Christianson* focused on the word "verify" in the foregoing language. Specifically: "[T]he use of the word 'verify' suggests that the sentencing court is doing just that, verifying that the individual the CDCR identified is in fact an individual described by the statute, not looking to see if the inmate meets an additional requirement (i.e., that the enhancement is imposed and not stayed)." (*Christianson*, *supra*, 97 Cal.App.5th at p. 312.) Whether that is an "additional requirement," however, is the crux of the issue.

*Christianson* assumed so because, as the court noted, "[a] judgment may include a sentence that has been imposed but suspended or stayed." (*Christianson*, *supra*, 97 Cal.App.5th at p. 311.) On this basis, the court concluded that the Legislature's use of "imposed" in section 1172.75 as a condition for proceeding towards resentencing is satisfied—first for the CDCR and subsequently for the verifying court—if a prison prior "enhancement [is] included in the abstract of judgment, regardless of whether it is imposed or stayed." (*Christianson*, at p. 312.) Like in *Renteria*, however, this analysis in essence no more than restates *Gonzalez*'s recognition that an "imposed" enhancement *can* mean one "imposed and then stayed" as much as one "imposed and executed."

As explained in *Rhodius*, however, we think the Legislature intended in section 1172.75 the practical, frequent meaning *Gonzalez* identified for "imposed," namely that a sentence was imposed "and then *execute[d]*, as opposed to impose[d] and then *stay[ed]*." (*Gonzalez*, *supra*, 43 Cal.4th at p. 1126.) Section 1172.75 thus reserves resentencing for when a section 667.5, subdivision (b), penalty enhancement has been executed.

*Rhodius* drew support for this interpretation from the statutory language requiring that resentencing under section 1172.75, subdivision (d)(1), must "result in a lesser sentence" and in the accompanying legislative history. (*Rhodius*, *supra*, 97 Cal.App.5th at pp. 44, 45-48.) In particular, we found section 1172.75, subdivision (d)(1)'s "requirement that the resentencing shall result in a *lesser* sentence than the one originally imposed" (italics added) to mean that the Legislature intended recall and resentencing to be available when, and only when, "the repealed enhancement increased the length of the

7

sentence." (*Rhodius*, *supra*, 97 Cal.App.5th at p. 44.) In other words: "The only way for the repealed enhancement to have increased the length of a sentence is for the enhancement to have been imposed and executed. If the repealed enhancement was imposed and stayed, the sentence would not have been increased, as was the case here." (*Ibid*.)

Our sister courts disagreeing with *Rhodius* have largely done so reasoning that recall and resentencing to strike-stayed enhancements results in a "lesser" sentence in a certain sense. "Thus, a stayed sentence enhancement remains as part of the judgment and continues to carry the potential for an increased sentence in certain circumstances, and removal of the stayed enhancement does provide some relief to the defendant by eliminating that potential." (*Christianson*, *supra*, 97 Cal.App.5th at p. 312 [citing *People v. Brewer* (2014) 225 Cal.App.4th 98, 104 (*Brewer*), regarding a stay "preserv[ing] the possibility of [later] imposition"]; see *People v. Mayberry* (2024) 102 Cal.App.5th 665, 674-675 [relying on *Christianson*], rev. granted Aug. 14, 2024, S285853; *People v. Saldana* (2023) 97 Cal.App.5th 1270 [same], rev. granted Mar. 12, 2024, S283547.)

In our view, the statutory language requiring a lesser sentence is better reconciled with an actual reduction in "time served" as the enactment's goal, as reflected throughout section 1172.75's legislative history. (See *Rhodius*, *supra*, 97 Cal.App.5th at pp. 46-48 [identifying numerous such instances].) We summarized that history as follows: "The findings, costs, and ramifications of Senate Bill 136 and Senate Bill 483 cited during the legislative sessions presuppose inmates who are serving additional time as a result of the sentencing enhancement under section 667.5(b). The references to financial and familial

8

burdens do not logically follow if a defendant is not actually serving additional time as the result of an imposed and executed sentence associated with a section 667.5(b) prior. As such, to interpret the statute to include enhancements that were imposed and stayed would be contrary to the legislative intent and the plain language of the statute." (*Rhodius*, at pp. 48-49.)

The post-*Rhodius* cases noted above do not address this extensive history, which we continue to find persuasive. (See *Rhodius*, *supra*, 97 Cal.App.5th at p. 47 [legislative history reflects "a clear presupposition by the Legislature of an imposed and executed sentence"].)

Moreover, we think the purpose of a stay being to "preserve the possibility of [later] imposition," as identified in *Christianson* and *Brewer*, better fits with section 1172.75 applying to executed section 667.5, subdivision (b), terms—not to stayed ones. The Legislature directed courts in section 1172.75, subdivision (c), to look to the "current judgment" to determine whether a defendant is eligible for resentencing. That must mean something. Specifying the "current" judgment is odd: one would expect a court considering resentencing to look, without this prodding, to the defendant's current judgment, not a superseded one. Emphasis on the current judgment may reflect that the Legislature was attuned to the possibility of a stay in a defendant's original judgment and only intended resentencing to apply in such cases if the section 667.5, subdivision (b), term was later executed, as reflected in the current judgment. There would be no need to specify the current judgment is controlling if a stayed prior prison term in the defendant's

9

original judgment triggered resentencing regardless of whether it was later executed or remained stayed.

For all the foregoing reasons, we continue to adhere to *Rhodius*.

**DISPOSITION**

We affirm the trial court's ruling denying defendant a resentencing hearing under section 1172.75; the court's ruling was correct because the prison prior enhancement imposed under section 667.5, subdivision (b), at his original sentencing has never been executed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                                                                     J.

I concur:

RAMIREZ _____
                          P. J.

10

[*People v. Jimenez*, E082632]

RAPHAEL, J., dissenting.

As the majority states, this appeal turns on the meaning of the word "imposed" in Penal Code section 1172.75, subdivision (a).[1] (Maj. opn., *ante*, at p. 3.) That provision declares legally invalid prison prior enhancements that were imposed. Does the term include "imposed and stayed" enhancements, such as the enhancement in Ivan Raul Jimenez's judgment? If so, that enhancement is to be struck from the judgment and Jimenez resentenced under current law.

The majority states it reads section 1172.75 "as a whole" (Maj. opinion, *ante*, at p. 5) to find that "imposed and stayed" enhancements are excluded. But it relies on just two isolated phrases. In my view, the better interpretation of the whole statute is that "imposed" encompasses any qualifying prison priors that were imposed, regardless of whether their punishment was stayed. This is explained in Section I below, discussing several of the statute's subdivisions. The section explains why the two phrases on which the majority focuses, if anything, undermine its view.

The majority's view, moreover, conflicts with the express purpose of section 1172.75's resentencing provisions: to apply *other* new sentencing laws to eliminate disparities and promote uniformity. Creating a disparity with those granted this benefit, the majority denies Jimenez resentencing for the sole reason that his sentencing judge chose to stay the punishment on his enhancement.

---

[1] Undesignated statutory citations in this dissent refer to the Penal Code.

1

I

Legislation effective in 2020 prospectively abolished most prior prison enhancements that had been imposed under section 667.5, subdivision (b). (Senate Bill No. 136 (2019-2020 Reg. Sess.); Stats 2019, ch. 590.) Our Legislature made that abolition retroactive in 2022, through Senate Bill No. 483 ((2021-2022 Reg. Sess.); Stats 2021, ch. 728), which enacted section 1171.1, later re-numbered as section 1172.75.

The first subdivision of this section contains the word "imposed" at issue here. It declares invalid almost any prior prison enhancement that had been imposed before the enhancements were abolished. That subdivision contains just one exception, for defendants convicted of sexually violent offenses. It states: "[a]ny sentence enhancement that was *imposed* prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." (§ 1172.75, subd. (a) [italics added].)

Subdivision (a) contains no exception for enhancements that were imposed and stayed. (§ 1172.75, subd. (a).) As the majority recognizes, we give statutory language its usual and ordinary meaning. (Maj. opn, *ante*, at p. 4.) Ordinarily, an enhancement placed in a judgment is described as "imposed" even if the punishment is stayed. Even the majority describes the enhancement here as one that was "imposed." (See, e.g., Maj. opn, *ante*, at p. 2 [in "imposing an enhanced term for the prison prior"], p. 3 [cases discuss "a prison prior enhancement imposed under former section 667.5, subdivision (b), but currently stayed"].) Considering the ordinary language of subdivision (a) alone, there

2

is no reason to read into it an exclusion that the Legislature could have added but did not. (*People v. Mayberry* (2024) 102 Cal.App.5th 665, 676 ["plain language" of subdivision (a) includes imposed and stayed enhancements], review granted Aug. 14, 2024, S285853.)

The Legislature *could* use "imposed" as an abbreviated way to communicate "imposed and executed," so the majority is at least correct that our interpretation need not stop at subdivision (a) alone. (§ 1172.75, subd. (a).) Analyzing a different statute, our Supreme Court found "the word 'impose' . . . must be interpreted as shorthand for 'impose and then execute' to make sense." (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1127.) Here, though, the rest of section 1172.75 shows that we need not read the word as shorthand for the statute to "make sense." Indeed, in *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1282 (*Renteria*), almost two years after the statute was enacted, even the People conceded that the law "squarely applies" to "imposed and stayed" enhancements. The People's view of the ordinary meaning, well after heavy litigation on the statute had begun, indicates that the shorthand interpretation is unnecessary for the statute to "make sense."[2]

The rest of section 1172.75 provides various reasons to conclude that we should not read into subdivision (a) an exclusion for "imposed and stayed" enhancements.

---

[2] Later, and in a different district, the People continued to agree that an "imposed and stayed" enhancement was "imposed" under section 1172.75, subdivision (a), but they argued that an inmate with such an enhancement nevertheless should not receive a resentencing. (*People v. Saldana* (2023) 97 Cal.App.5th 1270, 1275 & fn. 4 review granted Mar. 12, 2024, S283547.)

3

A.  *Subdivision (b)*

Subdivision (b) of section 1172.75 charges prison administrators with identifying judgments that include the enhancements declared invalid in subdivision (a).  It requires the "Secretary of the Department of Corrections and Rehabilitation [CDCR] and the county correctional administrator of each county" to "identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a)" and to provide certain information about those people "to the sentencing court that imposed the enhancement."  (§ 1172.75, subd. (b).)

The subdivision contains no suggestion that prison administrators exclude enhancements imposed and stayed.  A drafter of subdivision (b) could not expect that prison officials, charged with finding enhancements described in subdivision (a), would construe "imposed" using inferences gleaned, without any express direction to do so, from subsequent provisions of the statute, as the majority proposes.  (§ 1172.75, subds. (a), (b).)  The natural reading of subdivision (b) applies the interpretation the Attorney General had in *Renteria*, *supra*, 96 Cal.App.5th at p. 1282; that is, that subdivision (a) includes all imposed prison prior enhancements.

In fact, when drafting and voting on the statute, the Legislature was aware that CDCR had identified the individuals with enhancements imposed, at least as a group, when subdivision (a) was in the statute but none of the resentencing provisions yet were.  CDCR informed the Assembly Public Safety Committee that it had identified 10,133 inmates.  (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg.

Sess.) as amended July 7, 2021, pp. 3-4.) We know, from this case and many others, that CDCR identified defendants whose enhancements were "imposed" but also stayed, so we have every reason to presume that CDCR was including defendants like Jimenez all along. Thus, CDCR appears to have done exactly what a drafter or reader of the text would have expected it to do.

Subdivision (b), for these reasons, supports interpreting "imposed" in subdivision (a) to mean "imposed." (§ 1172.75, subds. (a), (b).) A statute that excluded "imposed and stayed" enhancements would provide clearer instructions to CDCR to exclude them.

B. *Subdivision (c)*

Subdivision (c) of section 1172.75 instructs trial courts on what to do with the information from prison administrators. The court is required to "verify" that the "current" judgment includes a sentencing enhancement described in subdivision (a). (§ 1172.75, subd. (c).) This means that the court is to check to ensure that the enhancement remains in the operative judgment.

The use of the verb "verify" suggests that the court is to confirm the judgment on its face falls within subdivision (a), rather than exercise judicial discretion to evaluate it. "Verifying" typically refers to confirming truth using external information, not analyzing something afresh. (See, e.g., *Intellicheck Mobilisa, Inc. v. Wizz Sys., LLC* (W.D. Wash. 2016) 173 F.Supp.3d 1085, 1108 [defining "verify" as "'to confirm the truth or truthfulness of. . .to confirm or establish the authenticity or existence of'"].) The use of the adjective "current" suggests that the court's verifying task is to ensure the

5

enhancement imposed in the judgment identified by CDCR has not been vacated, such as on direct appeal.

The task of *verifying* that the *current* judgment includes the enhancement suggests that CDCR has performed a ministerial task of finding judgments with the enhancements. It also suggests that the court's task is to confirm that the enhancement is still in the current judgment. This reading makes sense because, before the legislation was enacted, CDCR told the Legislature that it had identified the inmates (10,133 of them) whose judgments included the now-invalid enhancement. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483, supra, as amended July 7, 2021, pp. 3-4.) As this was no obstacle for CDCR, it would leave the court's task to verify that, between the time that CDCR provides the judgments and the petitioner's hearing, the enhancement had not already been eliminated from the current judgment. This is an ordinary meaning of the combination of "verify" and "current": to confirm that previously provided information is unchanged. (Cf. Welf. & Inst. Code, § 12304.41 ["verify" entity's "current" mailing address and update if needed]; Bus. & Prof. Code, § 7599.39 [licensee to "verify" proof of "current" registration].)

The majority, in contrast, sees the statutory requirement of verifying the "current" judgment as supporting court elimination of "imposed and stayed" enhancements. (Maj. opn., *ante*, at pp. 9-10) But every judgment that reaches the court is one that CDCR has identified as including the enhancement. The Legislature was aware that CDCR had identified 10,133 inmates with a judgment in which such an enhancement was imposed.

6

(Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483, supra, as amended July 7, 2021, p. 4.) The reason to have the court verify that the "current" judgment includes the enhancement would be to eliminate enhancements that have been vacated since the judgment that CDCR identified, not to perform a review under a standard that differs from CDCR's.

Consequently, the word "current" does nothing to advance the majority's argument and even undermines it. A "current" judgment (different from the original) might in theory have the enhancement *eliminated* after a direct appeal, but an appeal would not change an "imposed and executed" enhancement to one that is "imposed and stayed." If the statute did *not* use the word "current," it would more plausibly be read to require the trial court to scrutinize CDCR's work, rather than to confirm no relevant change has occurred in the interim.[3]

Moreover, subdivision (c) contains no suggestion that the court is supposed to exclude imposed enhancements for any reason not stated in subdivision (a). (§ 1172.75, subds. (c), (a).) On the contrary, the trial court must confirm that the judgment "includes a sentencing enhancement described in subdivision (a)" (§ 1172.75, subd. (c)), the

---

[3] It is theoretically possible, though unlikely, that CDCR could identify a judgment with an "imposed and executed" prison prior; the case would return for a resentencing on direct appeal; and in a new judgment the trial court would "impose and stay" the prison prior. That would mean the current judgment would differ from the original one in a way relevant to the majority's argument. But in practice, as here, nearly every "imposed and stayed" prison prior would be in the judgment identified by CDCR. The court's verification of the "current" judgment does not correlate with this unlikely scenario.

7

provision that describes prison priors "imposed" without indicating that stayed enhancements are excluded.

Finally, once a trial court determines the current judgment "includes an enhancement" described in subdivision (a), "the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) At that stage, "section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.) The statute thereby provides the entire process resulting in a mandatory resentencing without suggesting that the term "imposed" excludes "imposed and stayed."

C. *Subdivision (d)(1)*

In subdivision (d)(1), the Legislature required that the resentencing must result in a "lesser" sentence than the one originally imposed. (§ 1172.75, subd. (d)(1).) That description of a "lesser" sentence includes one where nothing changed from the original sentence but the elimination of an enhancement with a stayed prison term. Such a sentence is neither a "greater" sentence nor the "same" sentence earlier imposed. Rather, a sentence with an invalid enhancement struck is a lesser one than a sentence with one included.

The Legislature did not require that the court impose a "shorter" prison term than before. This choice of "lesser" rather than "shorter" appears deliberate. Subdivision (d)(1) also states that the court may not impose a "longer" sentence than the original one.

8

(§ 1172.75, subd. (d)(1).)  Though it forbade a *longer* sentence, the Legislature did not require a *shorter* one.

When the Assembly Committee on Public Safety added the "lesser" language to the statute in a July 15, 2021, amendment, it had a reason to use that word.  It had been informed that thousands of sentences would be rendered "lesser" but not necessarily "shorter" with the striking of an invalid enhancement.  CDCR had reported that 3,061 inmates with a prison prior were serving an indeterminate sentence (that is, a life sentence).  (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483, supra, as amended July 7, 2021, p. 4.)  The report explained that for these persons to be released they "would still be required to have a parole suitability hearing before the Board of Parole Hearings."  (*Ibid*.)  When CDCR provided the report, the "imposed" language in subdivision (a) had been in the draft statute for several months, since March 3, 2021.  CDCR had no different standard for what enhancements the statute covered, other than that they were "imposed."

The Legislature thereby learned that when courts eliminate prison priors from the judgment of any of over 3,000 defendants with indeterminate sentences, that action would not make a shorter sentence.  Even if a component of such a defendant's determinate sentence (or minimum custody time on their life sentence) is reduced, the defendant stays in custody for life unless they—separately—qualify for release on parole.  (See, e.g., *People v. Dowdy* (2024) 107 Cal.App.5th 1, 5-6 [prison priors imposed run consecutive to 25-years-to-life sentence].)  Such a defendant might, on a section 1172.75

9

resentencing, receive a shorter sentence for reasons *other* than the elimination of the enhancement.

Told that CDCR had identified 3,061 inmates with indeterminate sentences to whom section 1172.75 would apply, the Legislature did not narrow the statute to exclude them. These inmates qualify to have their enhancements eliminated and to be resentenced. The Legislature chose to eliminate these legally invalid enhancements even if doing so would not mean a shorter sentence for the inmate. The use of "lesser" in the statute accords with that. The Legislature's treatment of indeterminate sentences and its use of the term "lesser" (rather than "shorter") support concluding that section 1172.75 applies to "imposed and stayed" enhancements, a similar situation where the elimination of the enhancement would not itself mean a shorter sentence.

The majority (maj. opn., *ante*, at pp. 7-8) follows *People v. Rhodius* (2023) 97 Cal.App.5th 38, 44, review granted, Feb. 21, 2024, S283169, and interprets the requirement that the resentencing must "result in a lesser sentence" as meaning that an enhancement is imposed under subdivision (a) only if "the repealed enhancement increased the length of the sentence." Otherwise, *Rhodius* concluded, a resentencing court would have to "arbitrarily lower" the sentence, because the elimination of the enhancement would not itself do that. (*Ibid.*)

This view would be better supported had the Legislature required a "shorter" sentence. The Legislature did not do so, even though it prohibited "longer" sentences. The view also does not square with the Legislature's consideration of enhancements to

10

indeterminate sentences that do not "increase[] the length of the sentence" (*Rhodius*, supra, 97 Cal.App.5th at p. 44) because those defendants are subject to a life sentence no matter whether the enhancement was imposed and no matter whether it is eliminated. The *Rhodius* view seems to require that defendants with indeterminate sentences not receive section 1172.75 relief. But the Legislature was told that CDCR had identified these defendants for relief, and the legislative history suggests no intent to exclude them. If anything, the term "lesser" contradicts the majority's view: it helps show the statute includes defendants with indeterminate sentences and defendants with stayed enhancements. For each, striking the enhancement alone is a lesser sentence but not a shorter one.

D. *Subdivisions (d)(2), (d)(3), and (d)(4)*

The majority correctly recognizes that a preeminent goal of the Legislature in enacting section 1172.75 was to eliminate prison prior enhancements such that inmates do not serve custody time on them. (Maj. opn, *ante*, at p. 8.) That statutory purpose is satisfied because any interpretation of "imposed" includes all defendants with "imposed and executed" enhancements.

But the Legislature did not stop at *eliminating* the enhancements. Rather, it enacted a separate policy into the codified text. The Legislature ordered the resentencing of inmates based on current sentencing rules and "any other changes in law that reduce sentences or provide for judicial discretion." (§ 1172.75, subd. (d)(2).) The Legislature expressly stated its purpose: "to eliminate disparity of sentences and to promote

11

uniformity of sentencing." (*Ibid.*)  In recent years, there have been an array of ameliorative sentencing measures, and the inmates receive the benefits of any of them at the resentencing.  (See *People v. Christianson* (2023) 97 Cal.App.5th 300, 314 [section 1172.75 "involves statutory amendments expressly aimed at *reducing* sentences" and requires a full resentencing "in light of all associated sentencing reform"), review granted Feb. 21, 2024, S283189.)

To that end, the Legislature specified that a defendant could obtain a lesser sentence based on "postconviction factors."  (§ 1172.75, subd. (d)(3).)  At the resentencing, the inmate can benefit from their "disciplinary record and record of rehabilitation"; evidence that "age, time served, and diminished physical condition, if any, have reduced [their] risk for future violence"; and evidence that "circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."  (§ 1172.75, subd. (d)(3).)  For the resentencing, the court placed a presumption, like that it placed in section 1170, subdivision (b)(2), that the sentence will not exceed the middle term absent facts in aggravation that the inmate has admitted or that have been proved in court beyond a reasonable doubt.  (§ 1172.75, subd. (d)(4).)

These resentencing goals apply just as well to those with *stayed* punishment on their enhancements as they apply to those with *executed* punishment.  In fact, if we exclude those inmates with stayed punishment from section 1172.75 relief, we create

more sentencing disparities, not fewer.[4]  Perversely, it is defendants who merited stayed prison time on their enhancement—often due to a lower level of culpability in the eyes of the sentencing judge—who the majority denies the benefits of a resentencing.

The disparity the majority's view creates may be more discernible if one considers this case as an example.  Jimenez's 2018 sentence was increased by ten years due to two mandatory "nickel priors" (§ 667, subd. (a)(1)) that enhanced his imprisonment from twelve years eight months to twenty-two years eight months.  Effective in 2019, however, a change in the law "granted trial courts the discretion to strike or dismiss the previously mandatory five-year prior serious felony conviction enhancement under section 667, subdivision (a)(1)."  (*People v. Ellis* (2019) 43 Cal.App.5th 925, 928.)  If Jimenez received a resentencing, he would have a chance to ask the judge to dismiss one or both nickel priors in the furtherance of justice.  (See § 1385, subd. (a).)  He might rely on post-sentencing factors, such as those identified in section 1172.75, subdivision (d)(3).

Yet, under the majority's view, Jimenez is denied a resentencing solely because his trial court stayed his one-year punishment on his prison prior.  If the trial court had executed punishment on that enhancement, not only would that punishment be removed today, but Jimenez would have a chance to argue that the trial court should vacate the nickel priors as well, reducing his sentence by five or ten years.  At his original

---

[4]  Section 1172.75, however interpreted, arguably leaves disparities, as inmates who received no prison prior enhancement at all do not receive a resentencing.  Yet the disparities created by the majority's interpretation are more direct, as they involve the class of inmates with a prison prior, sorting them for the resentencing benefit based on whether their punishment was executed.

sentencing, Jimenez's trial judge exercised discretion in his favor not only by staying the punishment, but also by granting a motion under *People v. Romero* (1996) 13 Cal.4th 497 to strike a prior conviction, noting Jimenez's lack of violence and that his criminal record was not increasing in severity. In contrast, a defendant who the sentencing judge thought deserved *more* punishment—and thus received imprisonment on his prison prior—would today have a chance to seek the more lenient sentence simply because their prison prior enhancement was not stayed. This is not the uniformity in sentencing that section 1172.75, subdivision (d)(2) seeks.

Every inmate with an "imposed and executed" prison prior receives relief under section 1172.75, accomplishing the legislative policy of ensuring inmates do not serve time on prison priors. But the legislative policy of allowing a resentencing in section 1172.75, subdivisions (d)(2), (d)(3), and (d)(4) applies equally to those with "imposed and executed" and "imposed and stayed" prison priors. We undermine the uniform sentencing goal of the statute if we deny resentencing to those with punishment stayed on their enhancement.[5]

## II

For the reasons provided, the word "imposed" in subdivision (a), read either alone or with the whole statute, is best interpreted as including both "imposed and executed"

---

[5] The Legislature recently again endorsed resentencings in this context. Effective at the beginning of 2025, a new section 1171 states that a trial court "has jurisdiction to modify every aspect of the defendant's sentence" in a postconviction petition such as this one, so long as there is no more specific rule prohibiting doing so. (§ 1171, subd. (c) & (c)(2); see Assembly Bill No. 2483 (Stats. 2024, ch. 964, § 2, p. 93, eff. Jan. 1, 2025).)

and "imposed and stayed" enhancements.  The majority relies on two statutory terms—"lesser" sentence and "current" judgment—that do not advance its argument that "imposed" is shorthand for "imposed and executed."

The Legislature did not have to make retroactive its abolition of prison prior enhancements, but it did.  It did not have to provide for full resentencing of those whose enhancements are invalidated, but it did.  The majority finds Jimenez ineligible for resentencing, denying him the opportunity to ask a judge to dramatically reduce his sentence.  The sole reason for the denial is that his original sentencing judge found him *less* culpable and stayed the one-year sentence on his prison prior enhancement.  Defendants like Jimenez, but who did not get that stay, will have their punishment struck and also be allowed to try to reduce their sentence further under current law.  Our Legislature told us precisely why it enacted the resentencing provision: "to eliminate disparity of sentences and to promote uniformity of sentencing."  (§ 1172.5, subd. (d)(2).)  That purpose is not served today.

RAPHAEL

J.

15